THIS DISPOSITION IS CITABLE AS
PRECEDENT OF THE TTAB

Mailed: August 12, 2004

**UNITED STATES PATENT AND TRADEMARK OFFICE**
————————

**Trademark Trial and Appeal Board**
————————

In re Dell Inc.
————————

Serial No. 75851765
————————

Doreen L. Costa and Abigail Rubinstein of Baker Botts L.L.P. for Dell Inc.

William T. Verhosek, Trademark Examining Attorney, Law Office 114 (Margaret K. Le, Managing Attorney).
————————

Before Seeherman, Walters and Chapman, Administrative Trademark Judges.

Opinion by Seeherman, Administrative Trademark Judge:

Dell Inc., by change of name from Dell Computer Corporation, has applied to register QUIETCASE as a trademark for goods identified, as amended, as "computer hardware; internal cases for computer hardware being parts of computer work stations." The application, which was filed on November 17, 1999, was originally based on an asserted bona fide intention to use the mark in commerce. It was approved by the Examining Attorney, published for

opposition, and eventually a notice of allowance issued. Applicant filed several requests for an extension of time to file its statement of use. On May 9, 2002, applicant filed a statement of use, alleging first use and first use in commerce on January 31, 2002. On September 17, 2002, the Examining Attorney issued an Office action in which he found the specimen submitted in support of the statement of use to be unacceptable; on October 23, 2002, applicant filed an "insurance" request for an extension of time to file its statement of use.

Registration was ultimately finally refused on the basis that applicant has failed to submit a specimen which evidences actual trademark use. It is from this refusal that applicant has filed the present appeal.

The appeal has been fully briefed.[1] Applicant did not request an oral hearing.

The sole issue in this appeal is whether the specimen submitted by applicant on May 9, 2002 with its statement of use is acceptable to show use of the mark in connection with the identified goods.[2]

---

[1] Applicant's request for an extension of time to file its reply brief is granted.

[2] With its request for reconsideration, filed with a certificate of mailing dated October 16, 2003, applicant submitted a substitute specimen which was asserted to have been in use "prior to the expiration of the Fifth Extension of Time to file a Statement of Use." Because this fifth extension was filed after

2

Trademark Rule 2.56 provides, in part:

> §2.56  Specimens.
> (a) An application under section 1(a) of the Act, an amendment to allege use under §2.76, and a statement of use under §2.88 must each include one specimen showing the mark as used on or in connection with the goods, or in the sale or advertising of the services in commerce.
> (b)(1) A trademark specimen is a label, tag, or container for the goods, or a display associated with the goods.  The Office may accept another document related to the goods or the sale of the goods when it is not possible to place the mark on the goods or packaging for the goods.

Section 45 of the Trademark Act states, in part, that:

> For purposes of this Act, a mark shall be deemed to be in use in commerce—
> (1) on goods when—
> (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale....

The specimen submitted by applicant is a printout of a page taken from its website, which it asserts to be a display associated with the goods.  During the course of

---

the "insurance" fourth extension request, the Examining Attorney advised applicant that the fifth extension was not allowed, and therefore that any specimen which was used after the expiration of the fourth extension was not acceptable.  Applicant does not dispute this decision, and agrees that the only issue in this appeal is the acceptability of the original specimen.

examination, the Examining Attorney appeared to accept that a website page could, in theory, be a display associated with the goods, but that applicant's particular website page was not acceptable because of the manner in which the mark appeared on it. In his brief, however, the Examining Attorney also states that the specimen is mere advertising, and does not constitute a display at all. Applicant contends in its reply brief that the Examining Attorney had not previously objected to the specimen on the basis that it is mere advertising.

It appears to us that the Examining Attorney has made the statement that the specimen is mere advertising because of the distinction that is made in the case law between advertising, which does not constitute evidence of trademark use, and a display associated with the goods, which does. "Specimens are invalid for registration purposes only if they constitute mere advertising." Lands' End Inc. v. Manbeck, 797 F.Supp. 511, 24 USPQ2d 1314, 1316 (E.D. Va. 1992), quoting In re Shipley Co., 230 USPQ 691, 694 (TTAB 1986). The Examining Attorney seems to be taking the position that because the specimen is mere advertising, it is not a display associated with the goods or, perhaps, that because the specimen is not a display associated with the goods, it is mere advertising.

4

With respect to the question of whether a website page can constitute a display associated with the goods, it is true, as the Examining Attorney points out, that traditionally "displays associated with the goods" have been banners, shelf-talkers and other point-of-sale material. However, in Lands' End, the Court held that a catalog could also be a display associated with the goods. Lands' End was attempting to register KETCH as a trademark for purses, and

> submitted a page of its catalogue
> showing the picture of a purse, a verbal
> description, and the term "KETCH" as
> they allege constitutes trademark usage.
> The alleged trademark "KETCH" appears
> prominently in large bold lettering on
> the display of purses in the Lands' End
> specimen in a manner which closely
> associates the term with the purses.

24 USPQ2d at 1315.

As the Court reiterated in that decision, citing In re Shipley Co., 230 USPQ at 694 (TTAB 1986), "A point of sale location provides a customer with the opportunity to look to the displayed mark as a means of identifying and distinguishing the source of goods." 24 USPQ2d at 1316. In Shipley, the Board found that a specimen showing the mark at a trade show booth was an acceptable "display associated with the goods" because the trade show booth was a sales counter for the applicant's products, even though the chemicals being sold were not physically present at the

5

booth.  The Court found this situation analogous to the catalog involved in Lands' End; the customer could associate this display of the mark with the goods in deciding whether to buy the product.  Using the catalog, a customer could associate the product with the trademark in the display, and make a decision to purchase by filling out the sales form and sending it in or by calling in a purchase by phone.

Following the reasoning of the Lands' End decision, we hold that a website page which displays a product, and provides a means of ordering the product, can constitute a "display associated with the goods," as long as the mark appears on the webpage in a manner in which the mark is associated with the goods.  It is a well-recognized fact of current commercial life that many goods and services are offered for sale on-line, and that on-line sales make up a significant portion of trade.  Applicant itself sells many goods on-line.  In the declaration of Deborah McNair, a Communications Specialist for applicant, she states that in 1997

> Dell became the first company to record
> $1 million in online sales.  Today,
> Dell operates one of the highest volume
> Internet commerce sites in the world
> based on Microsoft Corp.'s Windows
> operating system.  Approximately half
> of Dell's business is Web-enabled.

> Indeed, in 2000 alone Dell surpassed
> sales of 50 million dollars per day via
> the Dell web site.

In today's commercial environment, we must recognize that the banners, shelf-talkers and other point of purchase displays that are associated with brick and mortar stores are not feasible for the on-line shopping setting. Web pages which display goods and their trademarks and provide for the on-line ordering of such goods are, in fact, electronic displays which are associated with the goods. Such uses are not merely advertising, because in addition to showing the goods and the features of the goods, they provide a link for ordering the goods. In effect, the website is an electronic retail store, and the webpage is a shelf-talker or banner which encourages the consumer to buy the product. A consumer using the link on the webpage to purchase the goods is the equivalent of a consumer seeing a shelf-talker and taking the item to the cashier in a brick and mortar store to purchase it.

The Examining Attorney has asserted that a single webpage does not fit within the Lands' End determination of a display associated with the goods because it is not an actual catalog nor is it an electronic catalog. However, the point made in Lands' End was not that, to be a display associated with the goods, the specimen had to be a catalog

7

(whether actual or electronic).  The single webpage

submitted in the present case is used as a vehicle for

ordering the product shown on the webpage.  As the

Examining Attorney has acknowledged, the specimen directs

> prospective purchasers to "Buy Online"
> through the icon "Customize it".  This
> is much akin to online retail stores[']
> icon of "Add to cart" or a shopping
> cart icon.

Office action mailed April 18, 2003.

The single webpage is, thus, a point of sale display, a

display by which the actual sale is made.

The Examining Attorney has also asserted that, even if

a single webpage would be acceptable as a point of sale

display, the particular webpage submitted by applicant as a

specimen does not meet the requirements of Lands' End

because it does not prominently display the mark with the

product.  The Examining Attorney points to the following

language in Section 904.06(a) of the Trademark Manual of

Examining Procedure (3d ed., rev. May 2003):

> [E]xamining attorneys should accept any
> catalog or similar specimen as a
> display associated with the goods,
> provided: (1) it includes a picture of
> the relevant goods; (2) it shows the
> mark sufficiently near the picture of
> the goods to associate the mark with
> the goods; and (3) it includes the
> information necessary to order the
> goods, (*e.g.*, a phone number, mailing
> address, or e-mail address).  Any form

8

> of advertising that satisfies these
> criteria should be construed as a
> display associated with the goods.  It
> is not necessary that the specimen list
> the price of the goods.

It is the Examining Attorney's position that applicant's specimen is unacceptable because it does not show the mark sufficiently near the picture of the goods to associate the mark with the goods, in that the mark is not near the photograph of the goods, and the mark is not prominently displayed, but "is in small font type and inconspicuously a part of a laundry list of descriptions and features for the goods."  Brief, p. 7.

In order to determine whether the mark which appears on the specimen is displayed in such a way that a customer can easily associate the mark with the identified goods, we must look to the specimen itself, a copy of which is reproduced below:



As can be seen, a photograph of the computer workstation appears in the top portion of the webpage. Information about the features of this workstation appear both next to the photograph, and also below the heading, "NEXT GENERATION INTEL® XEON® PERFORMANCE IN A HIGHLY

10

SCALABLE WORKSTATION." Listed in the bullet points below this heading is the trademark at issue: "QuietCase™ acoustic environment, provides easy access to system interior and supports tool-less upgrades and maintenance of key internal components."

The Examining Attorney is certainly correct that the trademark QUIETCASE does not appear next to the photograph of the goods. However, as applicant points out, the particular workstation is the only product on the webpage. Thus, it is clear that this is the product to which the trademark QUIETCASE refers. The Examining Attorney is also correct that the mark QUIETCASE is shown in a smaller type size than other words appearing on the webpage. However, it must be remembered that the specimen is a webpage, and that when it is actually viewed it will fill the consumer's monitor screen. Thus, the mark will appear larger than it does in the specimen contained in the file, or as reproduced in this opinion. Further, the mark appears in a bullet listing of information about the product. This list will be carefully perused by potential consumers because it contains information that is critical to the purchasing decision. In addition, in the particular bullet fact, the mark appears at the beginning of a line and is followed by the "TM" trademark indicator. This use of the designation

"TM" next to QUIETCASE lends a degree of visual prominence to the term.  But see, In re Brass-Craft Manufacturing Co., 49 USPQ2d 1849 (TTAB 1998); In re Remington Products Inc., 3 USPQ2d 1714 (TTAB 1987) (mere use of the "TM" indicator cannot transform an otherwise unregistrable term into a trademark).

In the context of the specimen webpage, we find that QUIETCASE is sufficiently prominent that consumers will recognize it as a trademark for the computer hardware shown on the webpage.[3]  See In re Hydron Technologies Inc., 51 USPQ2d 1531 (TTAB 1999), in which the Board found that copies of individual images taken from a video recording of an infomercial was a display associated with the goods, even though the mark was shown by itself on a separate screen print, and there was always intervening material between the showing of the mark and the ordering information.  The Board held that when the infomercial was considered as a viewer would perceive it, the slogan mark was associated with the goods which were the subject of the video.  In the same way, the specimen webpage will be

---

[3]  It appears from the bullet information that QUIETCASE is being used as a trademark to identify a feature of the hardware.  No objection to the specimen was raised on this basis, and we have therefore not considered this point in our decision on appeal.

12

viewed as a whole, and QUIETCASE will be perceived as a trademark for the goods.

Decision:  The refusal of registration is reversed.